**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
———————————————————————

**RICHARD J. SASSI, II,**

                                   **Plaintiff,**

     -against-                                         **9:16-cv-1450**

**DUTCHESS COUNTY, WARREN COUNTY,**

                                 **Defendants.**
———————————————————————

**THOMAS J. McAVOY,**
**Senior United States District Judge**


**DECISION & ORDER**

**I.    INTRODUCTION**

      Plaintiff Richard J. Sassi, II, commenced this action pursuant to 42 U.S.C. § 1983 asserting that his Eighth Amendment rights were violated through deliberate indifference to his serious medical needs while incarcerated at the Dutchess County and Warren County Jails, and that his First Amendment right to the free exercise of his religion was violated while incarcerated at the Warren County Jail. *See* Am. Compl. dkt. # 24.   Defendant Dutchess County moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the claims against it, dkt. # 26, which Plaintiff opposes.   Dkt. # 29.   Defendant Warren County moves pursuant to Fed. R. Civ. P. 12(c) to dismiss the claims against it, dkt. # 31, which Plaintiff also opposes.   Dkt. # 33.   The Court has determined to decide the motions without oral argument.   For the reasons that follow, Dutchess County's motion is granted in part and denied in part, and Warren County's motion is granted with Plaintiff given leave to replead

1

the dismissed claims.

## II.    BACKGROUND

### a. Plaintiff's Medical Conditions

Plaintiff suffers from asthma and environmental allergies, which he contends are caused by a number of different allergens, including dust, pollen, mold and pet dander. Am. Compl. ¶ 7.  Plaintiff asserts that in light of his asthma, his allergies can cause severe reactions, including tightness in his throat, which can make it difficult to breathe. *Id.* ¶ 8. He further contends that these reactions can cause significant discomfort and pain, such as sinus pressure. *Id.* ¶ 9.  Sassi alleges that his allergies also put him at risk of anaphylaxis, which is a rapid onset allergic reaction that can cause severe skin irritation, difficulty breathing and swallowing, cardiovascular symptoms including drop of blood pressure or shock, and gastrointestinal complications such as abdominal pain, diarrhea, and vomiting. *Id.* ¶ 10. He maintains that if left untreated, anaphylaxis can be life-threatening, particularly when it affects breathing or cardiovascular functions. *Id.* ¶ 11.  To cope with his allergies and prevent allergic reactions, Sassi maintains on a specific treatment regimen, including Zyrtec, which he takes daily, and weekly injections to help his body's response to the allergens that affect him. *Id.* ¶ 12.

Plaintiff is also prescribed an EpiPen, which is a device that delivers an emergency dose of epinephrine in the case of anaphylaxis. *Id.* ¶ 13.  Plaintiff contends that without a dose of epinephrine from the EpiPen when needed, "anaphylaxis can be life-threatening and, at the very least, cause significant and lasting pain and discomfort." *Id.* ¶ 14.

In addition to his asthma and allergies, Sassi suffers from sleep apnea, a condition

2

that causes him to stop breathing while he sleeps. *Id.* ¶ 15.  Plaintiff asserts that "[b]ecause of its effect on breathing, sleep apnea can be life threatening."  *Id.* ¶ 16.  Sassi is prescribed, and uses, a continuous positive airway pressure ("CPAP") machine while he sleeps. *Id.* ¶ 17.

### b. Dutchess County Jail

Plaintiff was incarcerated at the Dutchess County Jail from January 5, 2014 to January 8, 2014 when he was transferred to the Warren County Jail.  *Id.*  ¶¶ 5-6.  When Plaintiff entered the Dutchess County Jail, he advised medical personnel of his medical conditions, and of the risks associated with his failure to receive adequate treatment.  *Id.* ¶ 18.  He also requested, and made corrections officers and prison officials aware of his need for, these medications and devices throughout his incarceration at the Dutchess County Jail. *Id.* ¶ 19.   However, his prescribed allergy medication, Zyrtec, was confiscated and replaced with Benadryl.  *Id* ¶ 21.  Plaintiff contends that Benadryl "is inferior to Zyrtec with respect to Sassi's specific allergies and is ineffective for the plaintiff's treatment purposes" because, "while Zyrtec is preventative and helps to avoid allergic reaction, Benadryl is meant primarily as treatment after a reaction has already occurred and, even in that regard, is less effective with respect to plaintiff's specific allergies."  *Id.* ¶¶  22 - 23.

"The jail also refused to provide Sassi with medically necessary allergy injections." *Id.* ¶ 25.   Further, jail officials confiscated Plaintiff's prescribed EpiPen, and, he asserts upon information and belief, did not have an EpiPen or other emergency dose of epinephrine readily available had he suffered anaphylaxis while in his cell. *Id.* ¶¶ 28-29.

While jail officials allowed Plaintiff to use his CPAP Machine from 7:00 PM to 8:00

AM, he was not allowed to use it during the day even though he was confined to his cell for 23 hours a day and often fell asleep during the day. *Id.* ¶¶ 31-33. Plaintiff contends that prison officials were aware that inmates locked in their cells the entire day often fell asleep during the daytime hours, and knew that plaintiff fell asleep during the daytime hours. *Id.* ¶¶ 34-35.

Plaintiff asserts that the deprivations of his prescribed medication and devices "were undertaken pursuant to established county policy and/or practice and, taken together, these acts and omissions represent deliberate indifference to plaintiff's serious medical needs." *Id.* ¶ 36. He alleges that it is Dutchess County's "established policy and/or practice to provide only Benadryl to inmates with allergies without conducting an individualized assessment of the inmate's medical or treatment needs, ... to disallow injections for allergies without conducting an individualized assessment of the inmate's medical or treatment needs, ... [and] to disallow use of CPAP machines during daytime hours and to allow use of such machines only from 'lights out' until 'wake up' time." *Id.* ¶¶ 37-39. He further asserts that Dutchess County's deprivation of his medications and devices "put him at an increased risk of severe allergic reaction, needless significant pain and discomfort and even, potentially, death," and that although he was incarcerated in the Dutchess County Jail for only three days, "that jail's medical deprivations affected him after he transferred to Warren County." *Id.* ¶¶ 40-41. He contends that "[s]ince plaintiffs' [*sic*] medication regime [*sic*] has a large preventative and maintenance purpose, Dutchess County's deprivations thereof contributed to allergic reactions he had once he got to Warren County." *Id.* ¶ 42. Plaintiff further contends that "coming off the medication regimen caused plaintiff to have

4

gastrointestinal complications, including stomach pain and diarrhea." *Id.* ¶ 43.

### c. Warren County Jail

Plaintiff asserts that upon his transfer to the Warren County Jail, "as a matter of policy and practice, staff at that jail engaged in the same practices as are set forth above, even after being advised by plaintiff's physician of his need for the medications and treatments cited above." *Id.* ¶ 44.

Plaintiff also assert that "as a matter of policy and practice, the staff at Warren County's jail disallowed plaintiff from maintaining the personal bible [*sic*] with which he arrived," instead directing him "to purchase an over-priced new bible [*sic*] from the commissary." *Id.;*[2] *see also id.* ¶¶ 47-48.[3]   He contends, however, that "[d]uring the first seven days he was maintained at the Warren County Jail, by dint of county policy, plaintiff was not permitted to use the commissary." *Id.*  ¶ 50.  Plaintiff also contends that "[h]is jailors in Warren County also denied [him] the opportunity to participate in bible [*sic*] study classes." *Id.* ¶ 49.

### d. Legal Claims

Plaintiff contends that "[b]y dint of the implementation of the established policies and practices set forth above, both defendants caused plaintiff compensable damages arising from their deliberate indifference to his known medical needs." *Id*. ¶ 55.  He brings claims against both Dutchess County and Warren County alleging that the defendants violated his

---

[2]The Court presumes from the context of the allegations in the Amended Complaint that Plaintiff refers to the Christian Bible.

[3]Plaintiff asserts that he "filed a request to the facility to be allowed to use his personal bible [*sic*]" but "on 15 January 2014, implementing county policy, a sergeant officially advised plaintiff that he could not have his own bible [*sic*], but, rather could buy one at the commissary."  Am. Compl. ¶¶ 47-48.

Eighth Amendment right to receive adequate medical attention while incarcerated. *Id.* ¶¶ 58-59.

He also alleges that "[b]y failing to allow plaintiff to participate in bible [*sic*] study or to use his own personal bible [*sic*], defendants [*sic*] caused plaintiff emotional distress." *Id.* ¶ 46. He brings a claim against Warren County asserting that it "violated plaintiff's right to reasonable religious observance as protected by the First Amendment to the United States Constitution." *Id.* ¶ 60.

## III. STANDARDS OF REVIEW

### a. Rule 12(b)(6)

On a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the Court must accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (internal quotation marks omitted). This tenet does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* While Fed. R. Civ. P. 8(a)(2) "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me-accusation." *Id.* (citation and internal quotation marks omitted). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id.* A complaint which "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" is insufficient. *Id.* (citation omitted).

### b. Fed. R. Civ. P. 12(c)

Rule 12(c) of the Federal Rules of Civil Procedure allows a party to "move for judgment on the pleadings" after the pleadings are closed. Rule 12(c) motions are decided using the same standard as Rule 12(b)(6) motions. *Martine's Serv. Ctr. v. Town of Wallkill*, 554 Fed. App'x. 32, 34 (2d Cir. 2014).

### c. Eighth Amendment Inadequate Medical Care Claims

The Eighth Amendment, made applicable to the states through the Fourteenth Amendment, prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. The word "punishment" refers not only to deprivations imposed as a sanction for criminal wrongdoing, but also to deprivations suffered during imprisonment. *Estelle v. Gamble*, 429 U.S. 97, 102–03, 97 S. Ct. 285, 50 L. Ed.2d 251 (1976). Punishment is cruel and unusual if it involves the unnecessary and wanton infliction of pain or if it is incompatible with "'the evolving standards of decency that mark the progress of a maturing society.'" *Id*. at 102 (quoting *Trop v. Dulles*, 356 U.S. 86, 101, 78 S. Ct. 590, 2 L. Ed.2d 630 (1958)). Thus, the Eighth Amendment imposes on prison officials the duty to "provide humane conditions of confinement" for prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed.2d 811 (1994). In fulfilling this duty, prison officials must ensure, among other things, that inmates receive adequate medical care. *Id.* (citing *Hudson v. Palmer*, 468 U.S. 517, 526–27, 104 S. Ct. 3194, 82 L. Ed.2d 393 (1984)). However, "[b]ecause the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for

state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation." *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003).

"To establish an Eighth Amendment violation arising out of inadequate medical treatment, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (quoting *Estelle*, 429 U.S. at 104). "To plead a claim, a plaintiff must allege plausible facts supportive of such an inference." *Andrew v. Bellevue Hosp.*, No. 13-CV-8531 (KBF), 2016 WL 7009018, at *3 (S.D.N.Y. Nov. 30, 2016). The deliberate indifference standard has both objective and subjective prongs. *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011); *see Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003)(To state a claim, a plaintiff must first allege "that his medical condition is an objectively serious one." Then, he must allege facts supportive of an inference "that the defendant acted with deliberate indifference to" that medical condition.).

The objective prong considers whether the medical condition is sufficiently serious. *Smith v. Carpenter*, 316 F.3d 178, 183–84 (2d Cir. 2003). "The Second Circuit has stated that a medical need is serious if it presents 'a condition of urgency that may result in degeneration or extreme pain.'" *Shabazz v. Howard*, No. 9:12-CV-1372 NAM/TWD, 2015 WL 5604662, at *4 (N.D.N.Y. Sept. 23, 2015), appeal dismissed (July 7, 2016)(quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir.1998)). Relevant factors to consider when determining whether an alleged medical condition is sufficiently serious include, but are not limited to: (1) the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; (2) the presence of a medical condition that significantly affects an individual's daily activities; and (3) the existence of chronic and

substantial pain. *Id.* (citing *Chance*, 143 F. 3d at 702–03).

> [A]n Eighth Amendment claim may [also] be based on a defendant's conduct in exposing an inmate to an unreasonable risk of future harm and . . . actual physical injury is not necessary in order to demonstrate an Eighth Amendment violation. *See Helling v. McKinney*, 509 U.S. 25, 35, 113 S. Ct. 2475, 125 L. Ed.2d 22 (1993) (the potential future health risk caused by exposure to second hand smoke may form the basis for relief under the Eighth Amendment); *cf. White v. Napoleon*, 897 F.2d 103, 111 (3rd Cir.1990) (prisoner need not allege that his medical condition worsened in order to state a viable Eighth Amendment claim for denial of medical care). As the Supreme Court recognized in *Helling*, prison officials may not ignore medical conditions that are "very likely to cause serious illness and needless suffering" in the future even if the prisoner has "no serious current symptoms." *Helling*, 509 U.S. at 33, 113 S. Ct. 2475. Yet, although demonstrable adverse medical effects may not be required under the Eighth Amendment, the absence of present physical injury will often be probative in assessing the risk of future harm. *Cf.* [*Hudson v. McMillian*, 503 U.S. 1, 7, 112 S. Ct. 995, 117 L. Ed.2d 156 (1992)] (while serious injury is not required to bring an Eighth Amendment excessive force claim, "[t]he absence of serious injury is ... [still] relevant to the Eighth Amendment inquiry").

*Smith v. Carpenter*, 316 F.3d 178, 188 (2d Cir. 2003).

The subjective prong requires a plaintiff to demonstrate "that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness." *Shabazz*, 2015 WL 5604662, at *4 (citing *Wilson v. Seiter*, 501 U.S. 294, 301–03, 111 S. Ct. 2321, 115 L. Ed.2d 271 (1991); *Hathaway*, 37 F.3d at 66); *see also Lawrence v. Evans*, 669 F. App'x 27, 28 (2d Cir. 2016) ("To satisfy the subjective component [of an Eighth Amendment medical-treatment claim], a plaintiff must establish the equivalent of criminal recklessness, *i.e.*, 'that the charged official act[ed] or fail[ed] to act while actually aware of a substantial risk that serious inmate harm will result.'") (quoting *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006)). In this regard, "[a] plaintiff must demonstrate that a defendant acted with reckless disregard to a known risk of substantial harm." *Id.* (citing *Farmer*, 511 U.S. at 836).

Thus, to establish deliberate indifference, an inmate must prove that (1) the defendant was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the defendant actually drew that inference. *Id.* (citing *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702). "The inmate then must establish that the [defendant] consciously and intentionally disregarded or ignored that serious medical need." *Id.* (citing *Farmer*, 511 U.S. at 835). "[D]eliberate indifference is more substantial than mere disagreement over a course of treatment, negligence or even medical malpractice." *Santana v. Watson*, No. 13 Civ. 1549(SAS), 2014 WL 1803308, at * 5, 2014 U.S. Dist. LEXIS 62628, at * 24 (S.D.N.Y. May 6, 2014) (dismissing claim on summary judgment where, "[a]t most, the[ ] facts show that [the nurse] knew [plaintiff] had a prescription for a CPAP machine and failed to follow up on his CPAP request in a timely manner," but "[t]here [was] no indication that she deliberately denied access ..., or that she knew that the failure to provide a CPAP machine posed an excessive risk to [plaintiff's] health or safety.").

### d. First Amendment Free Exercise Clause

"Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003). "A prisoner's First Amendment rights, however, are '[b]alanced against ... the interests of prison officials charged with complex duties arising from the administration of the penal system.'" *Gilliam v. Baez*, No. 15-CV-6631 (KMK), 2017 WL 476733, at *4 (S.D.N.Y. Feb. 2, 2017)(quoting *Ford*, 352 F.3d at 588). "Accordingly, a prisoner's free exercise claims are 'judged under a reasonableness test less restrictive than ordinarily applied to alleged infringements of fundamental constitutional

rights.'" *Id.* (quoting *Ford*, 352 F.3d at 588).

"To prevail on a First Amendment claim, a plaintiff must show that he has a sincerely held religious belief, that it was substantially burdened, and that defendants' conduct was not reasonably related to some legitimate penological interest." *Barnes v. Furman*, 629 Fed. App'x 52, 55 (2d Cir. 2015). However, "it is unclear whether the 'substantial burden' element of this test remains viable," *Davis v. Williams*, No. 3:16-CV-1981 (JAM), 2017 WL 507213, at *2, n. 1 (D. Conn. Feb. 7, 2017), and the Second Circuit "has expressed doubt whether a prisoner must make this threshold showing." *Michalski v. Semple*, No. 3:16-CV-2039 (VAB), 2017 WL 4475994, at *6–7 (D. Conn. Oct. 6, 2017)(citing *Holland v. Goord*, 758 F.3d 215, 220 (2d Cir. 2014) ("It has not been decided in this Circuit whether, to state a claim under the First Amendment's Free Exercise Clause, a prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs.") (internal quotation marks omitted); *see also Williams v. Does*, 639 F. App'x 55, 56 (2d Cir. 2016)("We have not yet decided whether a prisoner asserting a free-exercise claim must, as a threshold requirement, show that the disputed conduct substantially burdened his sincerely held religious beliefs.")(citing *Holland*, 758 F.3d at 220–21).

## IV. DISCUSSION

### a. Dutchess County

#### 1. Benadryl instead of Zyrtec

Plaintiff alleges that Dutchess County has an established policy and/or practice of providing only Benadryl to inmates with allergies without conducting an individualized assessment of the inmates' medical or treatment needs. He further contends that Benadryl

is inferior to Zyrtec with respect to his specific allergies, and is ineffective for his treatment purposes because Benadryl is meant as a treatment after a reaction whereas Zyrtec is preventative and helps to avoid allergic reactions. In addition, he contends that his allergies combined with his asthma can cause severe reactions, including tightness in his throat making it difficult to breathe, sinus pressure, and a risk of anaphylaxis. Accepting these allegations as true, Plaintiff plausibly satisfies the first prong of the Eighth Amendment claim.[4]

Further, Plaintiff alleges that upon entry into the Dutchess County Jail, he advised medical personnel of his medical conditions and the risks associated with his failure to receive adequate treatment. He also alleges that he requested his prescribed medications and devices, and advised corrections officers and prison officials of his need for his medications and medical devices while incarcerated. While it is well-established that mere disagreement over the proper treatment does not create a constitutional claim so long as the treatment given is adequate, *Chance*, 143 F.3d at 703, accepting the allegations in the Amended Complaint as true, Plaintiff plausibly alleges that he put Dutchess County Jail

---

[4]Plaintiff will ultimately be required to establish that his medical condition, if treated with Benadryl instead of Zyrtec, was likely to produce death, degeneration, or extreme pain. *See Davidson v. Scully*, 155 F. Supp. 2d 77, 86 (S.D.N.Y. 2001)("Plaintiff alleges that he has seasonal rhinitis and allergies to dust, plantain, grass, trees, and other antigens. Plaintiff alleges that when left untreated, these allergies cause him headaches, earaches, sinus congestion, soreness in his throat and eyes, tearing, nasal infections, and breathing problems. However, plaintiff's allergies do not produce death, degeneration, or extreme pain; therefore, plaintiff's allergies are not, in objective terms, a serious medical need under the Eighth Amendment. The state need not treat prisoners at a level that 'exceeds what the average reasonable person would expect or avail [him]self of in life outside the prison walls. [A correctional facility] is not a health spa, but a prison in which convicted felons are incarcerated.' Seasonal allergies is a common condition that does not rise to constitutional dimensions. No reasonable jury could find that plaintiff's allergies constitutes a condition that produces death, degeneration, or extreme pain; therefore, plaintiff's Eighth Amendment claim based upon failure adequately to treat his allergies is not actionable.")(quoting *Dean v. Coughlin*, 804 F.2d 207, 213 (2d Cir.1986)(other citations omitted).

officials on notice that Benadryl is not an adequate substitute for Zyrtec for his particular

allergies and that, without his prescribed treatment, he was likely to suffer sever

consequences.  Plaintiff's contention that he advised medical personnel of the potential

serious risks associated with deviations from his prescribed treatment regimen combined

with the facts that he was neither assessed for the risks associated with deviation nor given

his prescribed medication, is sufficient to plausibly establish the second prong of a Eighth

Amendment claim.  In this regard, the allegations are sufficient to plausibly conclude that

prison officials were aware of facts from which the inference could be drawn that Plaintiff

had a serious medical need for continuation of his prescribed medication, a deviation from

which was "very likely to cause serious illness and needless suffering" in the future, and that

prison officials actually drew that inference yet exposed Plaintiff to an unreasonable risk of

future harm by failing to provide the prescribed medication.[5]  Because Plaintiff alleges that

the drug substitution occurred as a result of a Jail policy that did not take into account the

specific allergies suffered by inmates, Plaintiff has stated a plausible claim against Dutchess

County. *See Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004)(Under *Monell*

*v. Dep't of Soc. Serv. of New York*, 436 U.S. 658, 690, 98 S. Ct. 2018 (1978), "a

---

[5]Whether the Dutchess County Jail's treatment of Plaintiff was "very likely to cause serious illness and needless suffering" in the future is not an issue that can be resolved on this motion. Plaintiff will ultimately be required to establish that deviation from his prescribed medication was likely to produce death, degeneration, or extreme pain, that he advised medical personnel of this risk, and that medical personnel determined to expose Plaintiff to this risk based upon the County's policy of providing only Benadryl to inmates with allergies. *See Davidson*, 155 F. Supp. 2d at 86 ("Even if plaintiff's allergies did constitute a serious medical need, defendants have not been deliberately indifferent to that need. Plaintiff argues that defendants' failure to continue his desensitization shots constitutes deliberate indifference to his allergies. However, defendants treated plaintiff's allergies with allergy medications, including Seldane, Vancenase nasal spray, Sudafed, and Allegra. Plaintiff's complaints merely address the type of treatment he has received, and such complaints are not actionable under the Eighth Amendment.")(citations omitted).

13

prerequisite to municipal liability" is for the Plaintiff to "show that the challenged acts were performed pursuant to a municipal policy or custom."); *see also Kimbrough v. Town of Dewitt Police Dep't*, No. 08–CV–03, 2010 WL 3724017, at *6 (N.D.N.Y. Sept. 15, 2010) ("[I]t is hard to fathom how a plaintiff could provide more detail at the pleading stage regarding a *Monell* claim based on failure to train.").

## 2. Failure to Provide Weekly Injections

The same analysis applies to Plaintiff's claim that the Dutchess County Jail failed to provide him with his weekly allergy injections because a policy existed prohibiting such injections. Plaintiff's allegation that jail officials failed to provide him with his allergy injection is sufficient to infer that the timing of his weekly injection fell on one of the three days that he was incarcerated at the Dutchess County Jail. Because Plaintiff informed Jail officials of the significant ramifications of failing to comply with his allergy medication regimen, and because a policy existed preventing the administration of injections to inmates, Plaintiff has stated a plausible Eighth Amendment claim arising from the failure to provide him with his weekly injection.

## 3. EpiPen

Even assuming the truth of the allegations that jail officials confiscated Plaintiff's EpiPen and did not keep it or a substitute in a location where epinephrine could be quickly administered if needed, Plaintiff has not alleged that Jail officials' conduct in this regard was taken pursuant to a County policy or practice. While Plaintiff asserts that the deprivations of his prescribed medication and devices "were undertaken pursuant to established county policy and/or practice," Am. Compl., ¶ 36, this is a conclusory allegation insufficient to

14

establish *Monell* liability on the theory that epinephrine was not kept in a location where it could be quickly administered if needed. *See Devarnne v. City of Schenectady*, No. 10–CV–1037, 2011 WL 219722, at *3 (N.D.N.Y. Jan. 21, 2011) ("Conclusory allegations of a municipality's pattern or policy of unconstitutional behavior is insufficient to establish a *Monell* claim.")(quoting *McAllister v. New York City Policy Dep't*, 49 F. Supp.2d 688, 705 (S.D.N.Y.1999)). Unlike the alleged policies underlying his claims regarding the substitution of Benadryl for Zyrtec, the refusal to allow allergy injections,[6] or the refusal to allow the use of a CPAP machine during daytime hours, Plaintiff has not alleged that a policy or practice existed that prevented an inmate from receiving a dose of epinephrine when needed. Although Plaintiff, who is represented by counsel, already amended the complaint after Dutchess County first moved for dismissal, the Eighth Amendment claim based upon the confiscation of the EpiPen is dismissed with leave to amend. *See Cresci v. Mohawk Valley Cmty. Coll.*, 693 F. App'x 21, 25 (2d Cir. 2017)("The proper time for a plaintiff to move to amend the complaint is when the plaintiff learns from the District Court in what respect the complaint is deficient."); *Loreley Financing v. Wells Fargo Securities, LLC*, 797 F.3d 160, 190 (2d Cir. 2015)("Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies.").

### 4. Daytime Use of CPAP machine

Plaintiff also presents a plausible Eighth Amendment claim arising from denying him the use of his CPAP machine during the day. The Court presumes for purposes of this

---

[6]The Court interprets this allegation as applying to Plaintiff's weekly allergy injections.

15

motion that Plaintiff's allegations that he advised jail medical personnel of his medical conditions and the risk associated with his failure to receive adequate treatment included his need for a CPAP machine while he slept. This satisfies the first prong of an Eighth Amendment claim on this motion. *See Ross v. Westchester Cty. Jail*, No. 10 CIV. 3937 DLC, 2012 WL 86467, at *5 (S.D.N.Y. Jan. 11, 2012)("Ross's allegations are sufficient to state a claim against the County for deliberate indifference to a serious medical need. Sleep apnea may be a life-threatening disorder. Ross alleges that it causes him to stop breathing while he sleeps.").[7]

Further, Plaintiff alleges that jail officials were aware that inmates who were locked in their cells the entire day, like Plaintiff, often fell asleep during the daytime hours. Combined with the knowledge derived from Plaintiff's advice about the risks of sleeping without a CPAP machine, Plaintiff's allegations that jail officials were aware that Plaintiff was sleeping during the day without his CPAP machine are sufficient to plausibly satisfy the second

---

[7]Plaintiff will ultimately be required to establish that his sleep apnea is sufficiently grave to be constitutionally cognizable, and that the failure to provide him the CPAP machine during the day amounted to deliberate indifference to a serious medical condition. *See Santana v. Watson*, No. 13 CIV. 1549 SAS, 2014 WL 1803308, at *5 (S.D.N.Y. May 6, 2014)("But even if Santana had produced sufficient evidence that his sleep apnea is sufficiently grave to be constitutionally cognizable, because this condition was eventually treated, the focus of the inquiry here is the severity of the delay and interruption in his care rather than the seriousness of his medical condition. There is no indication that Santana's health declined during the time he was without a CPAP machine, or that the temporary deprivation significantly affected his daily activities or caused him chronic and substantial pain. Prison medical records show that Santana did not mention that he was suffering adverse effects from the lack of a CPAP machine during his October 21 exam or when he was held for observation on February 3. There is no evidence that Santana was ever in acute distress or experienced excessive pain. Therefore, Santana has not established that the delay and intermittent interruption in the provision of a CPAP machine were sufficiently serious to constitute an Eighth Amendment violation.")(citations omitted); *see also Flemming v. LaRose*, No. 9:11-CV-1232 GLS/TWD, 2014 WL 4684910, at *1 (N.D.N.Y. Sept. 19, 2014)( "Judge Dancks noted that, at most, Flemming lost one night of sleep because the power for his CPAP machine was off. Given that his own revelation revealed that, in the past, he had gone several days without use of his CPAP machine, Judge Dancks concluded that there was no evidence from which a factfinder could conclude that the temporary interruption in the use of his CPAP machine exacerbated his medical condition, or presented a serious medical need or risk to his health.")
.

prong of an Eighth Amendment claim. *See id.* Plaintiff also alleges that the Dutchess County Jail had a policy "to disallow use of CPAP machines during daytime hours," thereby providing a plausible basis to impose *Monell* liability upon Dutchess County on this theory.

### b. Warren County

#### 1. Exhaustion of Administrative Remedies

Although not specified in the Amended Complaint, both sides agree that Plaintiff was incarcerated at the Warren County Jail for nine days from January 8, 2014 to January 17, 2014. *See* Def. Mem. L. p. 10; Pl. Mem. L. pp. 5, 17. Because Plaintiff commenced this action on December 6, 2016, the administrative exhaustion requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), do not apply in this case. *Dilworth v. Goldberg*, No. 10 CIV. 2224 RJH GWG, 2011 WL 3501869, at *14 (S.D.N.Y. July 28, 2011), report and recommendation adopted, No. 10 CIV. 2224 RJH, 2011 WL 4526555 (S.D.N.Y. Sept. 30, 2011) ("This statute . . . mandates exhaustion only for those actions filed by prisoners while 'confined' in a jail. Thus, the statute is inapplicable where the litigant commencing the action files suit after release from confinement.")(citing *Grieg v. Goord*, 169 F.3d 165, 167 (2d Cir.1999) (*per curiam*). Accordingly, Warren County's motion on this ground is denied.

#### 2. First Amendment Free Exercise Clause Claim

Plaintiff alleges that he  was prevented from accessing a Bible (either his own or one purchased from the Jail's commissary) for seven days, and denied participation in Bible study classes while incarcerated at the Warren County Jail. Accepting these allegations of

as true, and assuming without deciding that Plaintiff sufficiently alleges a substantial burden on the free exercise of his religion, *see Davis v. Williams*, No. 3:16-CV-1981 (JAM), 2017 WL 507213, at *2 (D. Conn. Feb. 7, 2017) ("Because I conclude that plaintiff has alleged a substantial burden, there is no need for me to address this issue in the first instance at this time."); *see also Rossi v. Fishcer*, No. 13-CV-3167, 2015 WL 769551, at *7 (S.D.N.Y. Feb. 24, 2015) ("A substantial burden on religious exercise exists where the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs.") (internal citations and quotation marks omitted), he fails to allege facts supporting the "sincerely held religious belief" element of his claim. *See Salahuddin v. Goord*, 467 263, 274-75 (2d Cir. 2006)(As a threshold matter, "[t]he prisoner must show ... that the disputed conduct substantially burdens his sincerely held religious beliefs.").  Although the Second Circuit has cautioned the district courts not to "judge the significance of particular devotional obligations to an observant practitioner of faith," *McEachin v. McGuinnis*, 357 F.3d 197, 201 (2d Cir. 2004), the Amended Complaint is devoid of any allegations that would establish that Plaintiff has a sincerely held religious belief, or that preventing him from accessing a Bible for seven days or attending Bible study classes substantially burdened that belief. *See Gambino v. Payne*, No. 12-CV-0824SC, 2013 WL 1337319, at *8 (W.D.N.Y. Mar. 29, 2013). Under these circumstances, the claim must be dismissed. *See Gilliam*, 2017 WL 476733, at *5 ("Plaintiff does not allege that the specific services were central or important to his faith. . . . Accordingly, the Court grants Defendants' Motion to Dismiss Plaintiff's First Amendment claims on the grounds that Plaintiff has failed to make a threshold showing that the disputed conduct substantially burdened his sincerely held religious beliefs.") (internal quotation

marks and citations omitted); *Washington v. Chaboty*, No. 09-CV-9199, 2015 WL 1439348, at *9 (S.D.N.Y. Mar. 30, 2015)("To be entitled to protection under the free exercise clause of the First Amendment, a prisoner must make a threshold showing that the disputed conduct substantially burdened his sincerely held religious beliefs.")(alteration and internal quotation marks omitted); *Shapiro v. Cmty. First Servs., Inc.*, No. 11-CV-4061, 2014 WL 1276479, at *10 (E.D.N.Y. Mar. 27, 2014) ("At the motion to dismiss stage, a complaint must assert sufficient allegations necessary to establish that [the] plaintiff's claim is based upon a sincerely held religious belief.") (alteration and internal quotation marks omitted)).

Plaintiff asks that if the claim is dismissed, he be granted leave to amend. Because leave to amend should be freely given when justice so requires, Fed. R. Civ. P. 15(a)(2), and because there is no indication that Plaintiff is guilty of undue delay or bad faith in seeking to amend, or that Warren County would be unduly prejudiced by amendment, the First Amendment Free Exercise Clause claim against Warren County is dismissed without prejudice and with leave to amend. *See S.S. Silberblatt. Inc. v. East Harlem Pilot Block-Building I Housing Dev. Fund Co.*, 608 F .2d 28, 44 (2d Cir. 1979)("[I]f the plaintiff has at least colorable grounds for relief, justice does so require unless the plaintiff is guilty of undue delay or bad faith or unless permission to amend would unduly prejudice the opposing party."); *see also Cresci*, 693 F. App'x at 25; *Loreley Financing*, 797 F.3d at 190.

### 3. Eighth Amendment Claims

As a basis for his Eighth Amendment claims against Warren County, Plaintiff alleges that upon his transfer to the Warren County Jail, "as a matter of policy and practice, staff at that jail engaged in the same practices as [occurred at the Dutchess County Jail], even after

being advised by plaintiff's physician of his need for the medications and treatments [referenced in the Amended Complaint]." Am. Compl. ¶ 44. Inasmuch as the allegation is based upon the conduct occurring at a separate jail facility, it fails to provide specific allegations of Warren County's conduct such to allow this defendant to defend on the Eighth Amendment claims. Further, the allegation is wholly conclusory and amounts to nothing more than "an unadorned, the-defendant- unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. The Eighth Amendment claims against Warren County are dismissed without prejudice and with leave to amend.

## V. CONCLUSION

For the reasons set forth above, Dutchess County's motion [dkt. # 26] is GRANTED IN PART and DENIED IN PART. The motion is granted inasmuch as Plaintiff's Eighth Amendment claim against Dutchess County arising from the confiscation of Plaintiff's EpiPen and the failure to keep a reasonable substitute available is dismissed with leave to amend. The motion is denied in all other respects.

Warren County's motion [dkt. # 31] is GRANTED. Plaintiff's Eighth Amendment and First Amendment claims against Warren County are dismissed without prejudice and with leave to amend.

Plaintiff is given twenty (20) days from the date of this Decision and Order in which to file a Second Amended Complaint. The failure to file a Second Amended Complaint in this time period will be deemed an abandonment of the dismissed claims.

**IT IS SO ORDERED.**

20

Dated:October 20, 2017

Thomas J. McAvoy
Senior, U.S. District Judge